[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13012
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 16, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:07-cv-01041-MHT-CSC

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff - Appellee,

versus

L. THOMAS DEVELOPMENT, INC., et al.,

Defendants,

BRENDA MCQUEEN,
ALVIN MCQUEEN,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 16, 2012)

Before EDMONDSON and PRYOR, Circuit Judges, and HOPKINS,[*] District Judge.

PER CURIAM:

The issue in this appeal is whether Auto-Owners Insurance Company had no duty, under the terms of a general commercial liability insurance policy, to indemnify L. Thomas Development, Inc., for an arbitration award against Development and its owner, Lowell Thomas, based on the negligent construction of a home for Alvin and Brenda McQueen. The district court entered a judgment in favor of Auto-Owners on the ground that a work-product exclusion in the policy relieved Auto-Owners of its duty to indemnify Development for the entire award.

The district court erred in two ways. First, the district court did not consider the applicability of an exception to the work-product exclusion for work performed by subcontractors. Second, the district court applied the work-product exclusion, which concerns only "property damage," to the entire award, which is for both "property damage" and "bodily injury." We vacate the judgment in favor of Auto-Owners and remand for further proceedings.

[*]Honorable Virginia E. Hopkins, United States District Judge for the Northern District of Alabama, sitting by designation.

## I. BACKGROUND

In 2004, Alvin and Brenda McQueen hired L. Thomas Development, Inc., to construct a home in Montgomery County, Alabama. Development has one employee, Lowell Thomas, who testified that Development subcontracted "one hundred percent of [its] work." The McQueens paid Thomas $440,000 for the home at a closing in June 2004.

Development maintained a general commercial liability insurance policy with Auto-Owners Insurance Company with a term that began on June 10, 2003, and ended on June 10, 2004. Subject to several exclusions, the policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,'" which must be "caused by an 'occurrence' that takes place in the 'coverage territory' . . . during the policy period." The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time." The policy defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

3

The policy also provided a work-product exclusion:

This insurance does not apply to:
. . . .
l. "Property damage" to "[the insured's] work" arising out of it or any part of it and including in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor.

The policy defined "[the insured's] work" as "[w]ork or operations performed by [the insured] or on [the insured's] behalf[] and . . . [m]aterials, parts or equipment furnished in connection with such work or operations," as well as "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of '[the insured's] work.'" The policy also stated that the "products-completed operations hazard" encompasses "all . . . 'property damage' occurring away from premises [the insured] own[s] or rent[s] and arising out of . . . '[the insured's] work' except: (1) [p]roducts that are still in [the insured's] physical possession; or (2) [w]ork that has not yet been completed or abandoned."

Development began construction of the McQueens' home before it received a soil report, and the type of fill material it used for the foundation was unsuitable. Fluctuations in moisture underneath the home caused the foundation to move, which caused "extensive cracking of the interior walls, cracking of the exterior

brick, warped structural beams, and malfunctioning of the septic system,"

The McQueens filed a complaint against Thomas, Development, and other parties in state court. The complaint asserted claims for fraudulent inducement, fraudulent suppression, conspiracy to commit fraud, breach of contract, breach of warranty, and rescission. The McQueens later amended their complaint to add a claim for negligent construction. Auto-Owners provided counsel for Development in the state action under a reservation of rights, and intervened in July 2005 to determine the extent of its duty to indemnify Development under the policy. The state court dismissed the action in favor of arbitration.

Auto-Owners filed a declaratory judgment action against Development, Thomas, and the McQueens in the district court. The McQueens moved to stay the federal action pending the outcome of a mediation in the state court arbitration, and the district court granted that motion. The McQueens reached a mediated settlement with several of the defendants in the state court action, but not Development or Thomas.

An arbitrator entered an award in favor of the McQueens and against Development and Thomas, jointly and severally, in the amount of $600,000. Auto-Owners was not a party to the arbitration. The arbitrator determined that "the [McQueens] presented evidence in support of their claims for negligent

5

construction of their home and personal injury." The arbitrator concluded that Development and Thomas had negligently constructed the McQueens' home and caused the McQueens damages in two ways: (1) the McQueens were left with a valueless, unlivable home; and (2) because the McQueens were within a "zone of danger" while they inhabited the home and experienced unhappiness, fear, and embarrassment, they had suffered mental anguish. Neither Development nor Thomas appealed the arbitration award, and the state court entered the arbitration award as a final judgment.

The McQueens filed the arbitration award with the district court. After a status conference in which the parties agreed to final submissions without oral argument or trial, the district court ordered the parties to brief the merits of the controversy. Auto-Owners argued that neither Thomas nor the McQueens could establish "that any of the damages awarded [fell] within the definitions of 'property damage' or 'bodily injury'" in the policy, that there had been no covered "occurrence" to support coverage under the policy, and that if there had been a covered "occurrence," the work-product exclusion in the policy relieved Auto-Owners of any duty to indemnify Development for the award. Auto-Owners also explained that the only plausible apportionment of the award was $440,000 for "property damage" and $160,000 for "bodily injury." The McQueens argued that

6

"[t]he entire [a]ward [was] covered under the [p]olicy," because the arbitrator "awarded damages for . . . property damage and personal injury, i.e.[,] the exact things covered by the [p]olicy". The McQueens also argued that the negligent construction constituted a covered "occurrence," and that the work-product exclusion did not apply because "all of the work on [the McQueens'] home was performed by subcontractors".

The district court determined that Auto-Owners did not have a duty to indemnify Development for any portion of the arbitration award. The district court did not decide whether there had been a covered "occurrence," but instead based its decision on the work-product exclusion without addressing the exception to that exclusion for work performed by subcontractors. The district court entered a final judgment in favor of Auto-Owners.

## II. STANDARD OF REVIEW

We review a declaratory judgment de novo where, as here, the district court adjudicated an issue of law based on its interpretation of an insurance policy. See Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001) ("'The interpretation of an insurance contract is a question of law subject to de novo review.'") (quoting Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 774 (11th Cir. 2000)).

## III. DISCUSSION

The district court erred in two ways when it granted judgment in favor of Auto-Owners based on the work-product exclusion. First, the district court did not address the applicability of the exception to the work-product exclusion for work performed by subcontractors. Second, the district court did not consider whether and to what extent Auto-Owners was obligated to indemnify Development for the portion of the arbitration award that compensated the McQueens for "bodily injury." We discuss each of these errors in turn.

The district court failed to address an exception to the work-product exclusion that applies when "the damaged work or the work out of which the damage [arose] was performed on [the insured's] behalf by a subcontractor." The McQueens argued that this exception applies, and Thomas testified that Development "subcontract[ed] one[-]hundred percent of [its] work."

The district court also applied the work-product exclusion, which concerns coverage for "property damage," even though the arbitration award compensated the McQueens for both "property damage" and "bodily injury." The following findings by the arbitrator address both the McQueens' "property damage" and "bodily injury":

8

[O]verwhelming evidence of the problems with the [McQueens'] home was presented[,] . . . includ[ing] extensive cracking of the interior walls, cracking of the exterior brick, inoperable doors, walls that float from the foundation, sludge flowing into bathtubs because of problems with the septic system, and warped structural beams in the attic. Moreover, the [McQueens] both testified that they suffered because of the problems with their home. Mrs. McQueen testified that she feared the home would collapse, that she was so embarrassed by the home that she did not fill [sic] comfortable having family stay there, and that she, for the most part, now resides and works in Georgia because of her unhappiness and fear related to her home.

The arbitrator also found that "[n]ot only was the [McQueens'] home . . . rendered virtually uninhabitable, but more importantly, because they were residing in the home, the [McQueens] were within a zone of danger," which entitled them to recover damages for mental anguish. Auto-Owners conceded in the district court that mental anguish constitutes "bodily injury" under Alabama law. "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must 'give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered,'" Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1331 (11th Cir. 2010) (quoting Kahn v. Smith Barney Shearson Inc., 115 F.3d 930, 933 (11th Cir. 1997)), and "[i]n Alabama, as elsewhere, an arbitration award 'partakes of the nature of a judgment or decree of a competent court,'" Old Republic Ins. Co. v. Lanier, 790 So. 2d 922, 928 (Ala. 2000) (quoting Glens Falls Ins. Co. of N.Y. v. Garner, 229 Ala. 39, 41, 155 So.

9

533, 534 (1934)). Because the arbitration award compensated the McQueens for both "property damage" and "bodily injury" under the policy, the district court erred when it entered judgment in favor of Auto-Owners on the basis of the work-product exclusion alone.

## IV.  CONCLUSION

We **VACATE** the opinion of the district court and **REMAND** for further proceedings.